

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| **HILLARY DURGIN HARMON,** | § | Case No. 10-33789 |
| Debtor(s). | § | |
| | § | Chapter 11 |
| | § | |
| **HILLARY DURGIN HARMON**, *et al*, | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | Adversary No. 10-03207 |
| | § | |
| **LIGHTHOUSE CAPITAL FUNDING, INC.,** | § | |
| | § | |
| Defendant(s). | § | Judge Isgur |

## MEMORANDUM OPINION

For the reasons set forth below, the Court grants, in part, and denies, in part, Plaintiffs' Motion for Leave to File Trial Amendment.

### Background

Debtor Hillary Harmon and her husband, Murphey Harmon, filed this suit against Lighthouse Capital Funding, Inc. in state court on April 16, 2010. Hillary Harmon filed a chapter 11 bankruptcy petition on May 4, 2010. The Harmons removed the lawsuit against Lighthouse to this Court on May 10, 2010.

On July 8, 2010, the Harmons filed their First Amended Complaint in this adversary proceeding. Doc. 13. The allegations in the complaint arise out of a mortgage refinancing transaction between the Harmons, as mortgagors, and Lighthouse, the mortgagee. The Harmons assert claims against Lighthouse for fraud, usury, deceptive trade practices, negligent misrepresentation, conversion, theft, unreasonable collection practices, and negligent debt

collection. *Id.* In addition to damages, the Harmons seek a declaratory judgment that the Lighthouse mortgage constitutes an illegal home equity loan that is void under Texas law. *Id.*

The Court started a trial on August 10, 2010.[1] The evidence established that on April 18, 2008 Lighthouse provided a one year loan in the total amount of $1,268,598.87 to the Harmons. The loan was secured by a mortgage on the Harmons' homestead.

Under the terms of the loan, $177,715.83 of the $1,268,598.87 was to be held in an escrow account by Lighthouse. The evidence indicates that a portion of the $177,715.83 was then to be applied each month towards the Harmons' monthly interest payment. The agreement provided:

> As a consideration for providing you with a payment plan, the sum of $177,715.83 ("Funds") will be placed in escrow in a federally insured account in the name of the holder of the Loan (transferable as is necessary to said holder's servicing agent) and will be utilized to make the interest payments due during the period commencing on the first payment date specified in the Note evidencing the Loan ("Note") and ending on the Maturity Date . . . .

*See* Doc. 41.

Also at the August 10, 2010 trial, the Court was apprised of Lighthouse's failure to produce escrow account bank statements requested by the Harmons during discovery. The Court ordered Lighthouse to produce the bank statements and continued the trial. Lighthouse delivered the bank statements to the Harmons on August 19, 2010.

On September 8, 2010, the Harmons filed Plaintiffs' Motion for Leave to File Trial Amendment. *Id.* The Harmons assert that, contrary to the trial testimony of a Lighthouse officer, Lighthouse failed to properly maintain the $177,715.83 in an escrow account. The Harmons claim that instead of transferring the requisite interest payment on a monthly basis out of an escrow account, as required by the mortgage agreement, Lighthouse treated the

---

[1] Since the August 10, 2010 trial has been continued, the Court declines to make any final findings of fact in this opinion. To the extent any findings of fact are made, they are preliminary.

$177,715.83 as a *consolidated interest prepayment* of all interest due over the course of the twelve month loan.

According to the Harmons, Lighthouse's failure to maintain an escrow account and treatment of the $177,715.83 as a consolidated interest prepayment is legally significant for two reasons. First, the Harmons allege that Lighthouse's use of the $177,715.83 violated § 1639(g) of the Truth in Lending Act ("TILA"). Section 1639(g) provides that a "mortgage referred to in section 1602(aa) of this title may not include terms under which more than *2 periodic payments* required under the loan are *consolidated* and *paid in advance* from the loan proceeds provided to the consumer." 15 U.S.C. § 1639(g) (emphasis added). Second, the Harmons contend that Lighthouse, as the Harmon's escrow agent, breached its fiduciary duty to the Harmons by failing to properly maintain the $177,715.83 in an escrow account.

The Harmons seek to amend their complaint under Fed. R. Civ. P. 15[2] to include claims for violation of § 1639(g) and breach of fiduciary duty. The Harmons contend that amendment is appropriate because they were neither aware nor capable of becoming aware of the existence of such claims until Lighthouse produced the bank statements on August 19, 2010.

Lighthouse filed a Response to Motion for Leave to File Trial Amendment on September 24, 2010. Doc. 44. Lighthouse argues that the TILA claim is barred by 11 U.S.C. § 1640(e), which provides, in relevant part, "[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . ." 11 U.S.C. § 1640(e). According to Lighthouse, the alleged TILA violation occurred more than two years ago and is therefore barred by § 1640(e). Lighthouse further contends that equitable tolling of the TILA claim is improper for two

---

[2] Bankruptcy Rule 7015 provides: "Rule 15 FR Civ P applies in adversary proceedings." Fed. R. Bankr. P. 7015.

reasons.[3]  First, equitable tolling applies only to statutes of limitation, and § 1640(e) is a statute of repose.  Second, even if § 1640(e) is a statute of limitation, Lighthouse states that equitable tolling is improper here because the "the facts as alleged by [the Harmons] that form an alleged violation of 11 U.S.C. § 1639(g) were well known to Plaintiffs at and before April 18, 2008." Doc. 44.  Lighthouse additionally disputes the basis for the Harmons' claim for breach of fiduciary duty.  Lighthouse asserts that it did not breach any fiduciary duty and also implicitly argues that, even if a breach occurred, the Harmons suffered no damages.

## Rule 15 Standard

Rule 15(a)(2) provides that, before trial, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Rule 15(b)(1) enables parties to amend their pleadings during and after trial:

> If, at trial, a party objects that evidence is not within the issues raised in the pleadings, the court may permit the pleadings to be amended. The court should freely permit an amendment when doing so will aid in presenting the merits and the objecting party fails to satisfy the court that the evidence would prejudice that party's action or defense on the merits. The court may grant a continuance to enable the objecting party to meet the evidence.

Fed. R. Civ. P. 15(b)(1)

In their motion to amend, the Harmons refer to Rule 15(a) as the authority governing the Court's analysis.  Lighthouse's response did not dispute Rule 15(a)'s applicability.  However, the Court is concerned that, since the trial began on August 10, 2010, this motion is governed by Rule 15(b)(1).  This concern is tempered by the fact that, at trial, Lighthouse did not "object that evidence [was] not within the issues raised in the pleadings."  Such an objection would have

---

[3] The Harmons submitted a brief in reply to the equitable tolling issues raised by Lighthouse on October 13, 2010. Doc. 49.

been impossible because the evidence underlying the new allegations was not produced to the Harmons until nine days after the commencement of the trial. Thus, it appears that the Harmons motion is in a limbo stage not fully contemplated by either Rule 15(a)(2), Rule 15(b)(1), or any other Rule 15 provision.[4]

Nevertheless, since the parties do not dispute the applicability of Rule 15(a), the Court will apply Rule 15(a). The Court notes, however, that the result in this case would be the same under either Rule 15(a)(2) or Rule (15)(b)(1).

**Analysis**

Rule 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2). "In deciding whether to grant such leave, the court may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *In re Southmark Corp.*, 88 F.3d 311, 314 (5th Cir. 1996) (citations omitted).

**1. Factors Clearly Favoring the Harmons**

In this case, all of the factors but one—the futility of amendment—unquestionably support granting the Harmons' motion. The Harmons were unaware of the evidence supporting their TILA and breach of fiduciary duty claims until August 19, 2010, when they received the escrow account bank statements. The Harmons' failure to previously raise such claims is not attributable to any bad faith or dilatory motive on their part. To the contrary, Lighthouse caused the delay by failing to produce the bank statements when they were originally requested by the Harmons. Furthermore, the Harmons have amended their complaint only once; this motion to

---

[4] Given the purpose underlying Rule 15, the Court has no doubt that Rule 15 permits the Harmons to seek to amend their complaint. *See United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981) ("[T]he underlying purpose of Rule 15 [is] to facilitate decision on the merits, rather than on the pleadings or technicalities.").

amend does not seek to cure any deficiencies from the previous amendment. Finally, it would be patently unfair to permit Lighthouse to hide behind its own failure to respond to discovery by claiming undue prejudice. There is no undue prejudice to Lighthouse.

### 2. Futility of Amendment Factor

The only factor that raises doubt as to whether the Court should grant the Harmons' motion to amend is "the futility of amendment" factor. Lighthouse implicitly argues that both of the Harmons' claims are futile.

#### a. The Harmons' TILA Claim

Lighthouse argues that the TILA claim is barred by § 1640(e), which, according to Lighthouse, is a statute of repose not subject to equitable tolling. The Harmons contend, on the other hand, that their TILA claim is not futile because § 1640(e) is a statute of limitations that is subject to equitable tolling.

"A statute of limitations governs the time within which an action must be commenced after the cause of action accrues." 54 C.J.S. *Limitations of Actions* § 7 (2010). Whereas, a "statute of repose . . . limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered." *Id.* In order to qualify as a statute of repose, the statute must "speak in jurisdictional terms" and set forth "an absolute limit within which suits must be filed." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998) (citations omitted); *see also Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (a statute of repose provides a "jurisdictional bar under which federal courts lack the power to extend the period to allow for late adjudication of claims").

Unlike statutes of repose, statutes of limitation are generally subject to the doctrine of equitable tolling. *Ellis v. GMAC*, 160 F.3d 703, 706 (11th Cir. 1998) ("Unless Congress states otherwise, equitable tolling should be read into every federal statute of limitations.") (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 395-96 (1946)). "Equitable tolling is the doctrine under which plaintiffs may sue after the statutory period has expired if they have been prevented from doing so due to inequitable circumstances." *Ellis v. GMAC*, 160 F.3d 703, 706 (11th Cir. 1998).

Every circuit court that has addressed the question has held that § 1640(e) is a statute of limitation subject to equitable tolling. *See Id.* at 708; *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 502 (3d Cir. 1998); *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986); *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984). All four circuits based their holdings on the same principles, which are summarized in *Ellis*:

> Despite TILA's clearly remedial purpose, if we were to read its time limit literally, consumers whose cause of action was fraudulently concealed from them until after a year had passed could not pursue a cause of action under TILA. That would lead to the anomalous result that a statute designed to remediate the effects of fraud would instead reward those perpetrators who concealed their fraud long enough to time-bar their victims' remedy. We cannot believe this was Congress' intent. Rather, in these circumstances we apply the general rule that equitable tolling applies to all federal statutes unless the statute states otherwise. *Holmberg*, 327 U.S. at 394-95, 66 S. Ct. 582. We therefore agree with the Third, Sixth, and Ninth Circuits that the statute of limitations in TILA is subject to equitable tolling.

*Ellis*, 160 F.3d at 708. Furthermore, although the Fifth Circuit has not directly confronted the issue, it has assumed, without deciding, that equitable tolling may be applied to § 1640(e). *Moor v Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986) ("To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct."). The Court sees no reason to depart from the substantial precedent in favor of equitable tolling.

Accordingly, the Court holds that § 1640(e) is a statute of limitation subject to equitable tolling. To borrow from the Ninth Circuit, the Court:

> hold[s] that the limitations period in Section 1640(e) runs from the date of consummation of the transaction but that the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action.

*King*, 784 F.2d at 915.

Lighthouse additionally argues that equitable tolling should not apply in this case because the Harmons were aware of their prepaid interest arrangement with Lighthouse when they executed the loan agreement on April 18, 2008. The Court agrees, in part, with Lighthouse. On April 18, 2008, both the Harmons and Lighthouse understood that the Harmons were segregating $177,715.83 of the $1,268,598.87 loan so that the $177,715.83 would be available to fund monthly interest payments. Lighthouse did not conceal the role of the $177,715.83 from the Harmons. The contract explicitly provided ***how*** the $177,715.83 would be applied to the debt—out of an escrow account towards interest payments. Accordingly, to the extent the Harmons argue that the escrow agreement itself violated TILA, the claim is not tolled and is barred by the statute of limitations.

However, the Court disagrees with Lighthouse on the issue of equitable tolling as it relates to the question of ***when*** the $177,715.83 was to be applied to the debt under the escrow agreement. The escrow agreement explicitly provides that:

> [T]he sum of $177,715.83 ("Funds") will be placed in escrow in a federally insured account in the name of the holder of the Loan (transferable as is necessary to said holder's servicing agent) and will be utilized to make the interest payments due during the period commencing on the first payment date specified in the Note evidencing the Loan ("Note") and ending on the Maturity Date . . .

*See* Doc. 41. The Harmons allege that Lighthouse failed to abide by the escrow agreement because Lighthouse allegedly never established an escrow account. The purpose of the escrow account was to enable Lighthouse to withdraw the requisite interest payment from the $177,715.83 account *each month when the payment became due*. Instead, according to the Harmons, Lighthouse treated the entire $177,715.83 amount as *one, consolidated interest prepayment*, in violation of § 1639(g).[5] Regardless of whether this allegation is true, the Court determines that it is potentially meritorious and that it could not have been raised before August 19, 2010, when Lighthouse delivered the bank statements to the Harmons. Thus, the Court finds that the Harmons' § 1639(g) claim is subject to equitable tolling and, accordingly, holds that the futility of amendment factor favors the Harmons.

### b. The Harmons' Breach of Fiduciary Duty Claim

Lighthouse argues, and the Court agrees, that a fiduciary relationship never existed between the Harmons and Lighthouse. Thus, the Court finds that the Harmons' breach of fiduciary duty claim is futile.

The Harmons seek to amend their complaint to include the allegation that Lighthouse breached the fiduciary duty it owed the Harmons by failing to establish the escrow account. The Harmons support this claim with Texas caselaw concerning the fiduciary duty that an escrow agent owes to both parties to an escrow contract. *See Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 203 (Tex. App.—Houston [1st Dist.] 2008, writ denied) ("Generally speaking, 'an escrow agent owes a fiduciary duty to both parties to [an escrow] contract.'") (quoting *Trevino v. Brookhill Capital Resources, Inc.*, 782 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.] 1989, writ denied).

---

[5] Section 1639(g) provides that a "mortgage referred to in section 1602(aa) of this title may not include terms under which more than *2 periodic payments* required under the loan are *consolidated* and *paid in advanc*e from the loan proceeds provided to the consumer." 15 U.S.C. § 1639(g) (emphasis added).

The Harmons' theory misconstrues Lighthouse's role in the loan transaction by ignoring the significance of Lighthouse's mortgagee status.  A fiduciary relationship does not arise simply because a mortgagee holds the mortgagor's funds in an escrow account.  As stated by the Fifth Circuit, "the courts of Texas have left no doubt that the mere 'payment of funds by the mortgagor into an escrow account for the mortgagee's use to meet tax and insurance obligations on the property as they accrued does not create a trust or fiduciary relationship under Texas law.'"  *Monumental Life Ins. Co. v. Hayes-Jenkins*, 403 F.3d 304, 318 (5th Cir. 2005) (citations omitted).  The Court does not see any reason to distinguish a prepaid interest escrow account from an escrow account containing tax and insurance funds.  In both cases, the escrow account exists primarily to protect the interests of the mortgagee.  Thus, Lighthouse was not the prototypical, impartial escrow agent when dealing with the Harmons, and Lighthouse did not owe the Harmons a fiduciary duty.

Since no fiduciary duty existed between Lighthouse and the Harmons, it would be futile for the Harmons to allege the violation of such a duty.  Accordingly, the Court denies the Harmons' request to amend their complaint to include a claim for breach of fiduciary duty.

## Conclusion

For the reasons set forth above, the Court grants, in part, and denies, in part, Plaintiffs' Motion for Leave to File Trial Amendment.  A separate order consistent with this Memorandum Opinion will be issued.

SIGNED **October 22, 2010.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE