IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE:<br><br>HILLARY DURGIN HARMON,<br><br>DEBTOR. | § § § § § § § § | Case No. 10-33789<br>Chapter 11 |
| HILLARY D. HARMON, ET AL,<br>PLAINTIFFS,<br>v.<br><br>LIGHTHOUSE CAPITAL FUNDING, INC.,<br>DEFENDANT. | § § § § § § § § § § § § | ADVERSARY NO. 10-03207 |

**PLAINTIFFS' SUPPLEMENT TO FIRST AMENDED COMPLAINT**

## TO: THE HONORABLE MARVIN ISGUR, CHIEF UNITED STATES BANKRUPTCY JUDGE:

**HILLARY DURGIN HARMON and MURPHEY HARMON**, plaintiffs in the captioned adversary proceeding ("Plaintiffs"), hereby file this Supplement to First Amended Complaint:

### I.

### INTRODUCTION

1.  A trial in this adversary proceeding commenced on August 10, 2010. At the trial, in addition to other relief granted to Plaintiffs, the Court ordered Defendant Lighthouse Capital Funding, Inc. ("LCFI") to produce bank statements for the alleged escrow account established pursuant to the Escrow Arrangement and Agreement.

2. Based on the production of the bank statements for the alleged escrow account, Plaintiffs filed a Motion for Leave to File Trial Amendment on September 7, 2010. Document No. 41.

3. On October 22, 2010, the Court entered a Memorandum Opinion and Order granting in part and denying in part the Motion for Leave to File Trial Amendment. Document Nos. 50 and 51. The Court permitted Plaintiffs to amend their complaint to include the claim that Lighthouse violated 15 U.S.C. § 1639(g). Said claim was set forth in Plaintiffs' proposed Supplement to First Amended Complaint, which was attached to the Motion for Leave to File Trial Amendment. This pleading is identical with the exclusion of the claims which the Court did not permit by virtue of the Order at Document No. 51.

4. LCFI has now produced the bank account statements for an account styled "Lighthouse Capital Funding, Inc.," which appears to be a general bank account for LCFI. The account statement for April 2008 reveals that $1,268,598.87, the amount of the loan, was transferred into the so-called escrow account on April 23, 2008, from an unnamed account. The so-called escrow account was not denominated "Escrow Account". It was merely an account in the name of Defendant LCFI. On the same date, the April 2008 account statement for the so-called escrow account shows that $1,026,383.04 was transferred to Fidelity National Title. This syncs up the Final Check Register of Fidelity, which was Harmon Trial Exhibit 23. On the same date, $230,000.00 was transferred to an unnamed account. After such transfers, the balance in the so called escrow account on April 23, 2008, was $22,047.15, and the balance in the so called escrow account at the end of April 2008, was $4,265.83. It is now clear that the prepaid interest of $177,715.83 was never maintained in any escrow account because the account balance in the so-called escrow account was far less than $177,715.83 on April 30, 2010. Escrowed funds in

the aggregate (which Leshgold testified would have included the Harmons' interest payments) in fact were not transferred out of the so-called escrow account on a monthly basis in April 2008 or for any month thereafter.  In fact there never was a balance in the alleged escrow account at the end of any month from April 2008, forward, high enough to represent anywhere near what the balance of the Harmon escrowed funds should have been.

5. This is directly contrary to the Escrow Arrangement and Agreement, which provided:

> "1. As a consideration for providing you with a payment plan, the sum of $177,715.83 ("Funds") will be placed in escrow in a federally insured account in the name of the holder of the Loan (transferable as is necessary to said holder's servicing agent) and will be utilized to make the interest payments due during the period commencing on the first payment date specified in the Note evidencing the Loan ("'Note") and ending on the Maturity Date.  Accordingly, you will pay the holder of the Loan or its servicing agent ("Mortgagee") on the basis of the following payment schedule:"

6. The "spirit" if not the "letter" of the Escrow Arrangement and Agreement as corroborated by the testimony of Leshgold at the trial on August 10, 2010, clearly was that the money would remain physically in escrow, and the required monthly payments of $14,500.32 would be transferred out of escrow every month and applied to the loan.  This is not true based on the bank statements produced on the so-called escrow account.

7. It thus appears clear to Plaintiffs that the $177,715.83 was initially advanced into the so-called escrow account, but on the same date it was transferred out to some unnamed account.  Thus, from a physical point of view, this was not an interest escrow out of which monthly payments would be made; in reality, this was an interest prepayment for all interest due during the twelve months of the loan.

## II.

## **ADDITIONAL CAUSE OF ACTION**

**A.    Violation of TILA**

8.    Defendant LCFI has violated the Truth in Lending Act, 15 U.S.C. § 1601 et. seq.

TILA § 1639(g) provides as follows:

> "(g) No prepaid payments
> A mortgage referred to in section 1602(aa) of this title may not include terms under which more than 2 periodic payments required under the loan are consolidated and paid in advance from the loan proceeds provided to the consumer.

9.    TILA § 1602(aa) provides as follows:

> (aa)(1) A mortgage referred to in this subsection means a consumer credit transaction that is secured by the consumer's principal dwelling, other than a residential mortgage transaction,[1] a reverse mortgage transaction,[2] or a transaction under an open end credit plan,[3] if—
>
> (A) the annual percentage rate at consummation of the transaction will exceed by more than 10 percentage points the yield on Treasury securities having comparable periods of maturity on the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the creditor; or
>
> (B) the total points and fees payable by the consumer at or before closing will exceed the greater of--
>
> > (i)    8 percent of the total loan amount; or
> > (ii)   $400.

---

[1] 15 U.S.C. § 1602(w) provides: "The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling. The loan in question was not to finance the acquisition or initial construction of Debtor's homestead.

[2] The transaction under consideration is not a reverse mortgage transaction as defined in 15 U.S.C. § 1602(bb).

[3] The transaction under consideration is not a transaction under an open end credit plan as defined in 15 U.S.C. § 1602(i).

10. Since this was a loan with a one year maturity, the one year treasury bill rate is the applicable rate. The one year treasury bill rate was 1.52 percent as of March 14, 2008, and 1.35 as of March 21, 2008.[4] The interest rate on the loan in question was 14%, which exceeds by more than 10% the yield on one year treasury bills as of the 15th of the month immediately preceding April 2008, the month the loan in question closed. Thus, TILA § 1639(g) applies in this case.

11. In effect, there was no interest reserve escrowed by LCFI. It was an advance payment of interest, certainly more than two of the $14,800.32 periodic monthly payments required under the loan. It was referred to by LCFI as "prepaid interest". Therefore, the loan violated TILA § 1639(g).

12. The penalties for violating TILA § 1639(g) are set forth in TILA § 1640(a), as follows:

> "(1) any actual damage sustained by such person as a result of the failure;
> . . .
>
> (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 or 1638(e)(7) of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court;
>
> (4) in the case of a failure to comply with any requirement under section 1639 of this title, an amount equal to the sum of all finance charges and fees paid by the consumer, unless the creditor demonstrates that the failure to comply is not material."

13. Thus, in this case the Harmons claim statutory damages equal to all finance charges and fees paid by the Harmons to Lighthouse. The fees charged to the Harmons and paid out of the loan proceeds were: (a) Loan Origination Fee in the amount of $52,000 paid to LCFI;

---

[4] The following website was the source of this information:
http://www.federalreserve.gov/releases/h15/data/Weekly_Friday_/H15_TCMNOM_Y1.txt

(b) $26,000.00 paid to Mortgage Broker, Thrower Meinen Thrower/Mr. EJ Davis; and (c) $12,500.00 for Legal/Travel/Processing Fees. Additionally, the Harmons claim statutory damages equal to the finance charges paid by the Harmons, i.e., the $177,715.83 in prepaid interest plus all other interest that LCFI claims is due under the loan . Additionally, the Harmons claim attorney fees and out of pocket expenses incurred in prosecuting this action against LCFI.

14. Additionally, Plaintiffs would show that the one year statute of limitations under TILA § 1640(e) would be tolled by the doctrine of "equitable tolling". *See Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 708 (11th Cir.1998); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499, 505 (3rd Cir.1998); *Jones v. TransOhio Sav. Ass'n,* 747 F. 2d 1037, 1041 (6th Cir. 1984); *King v. California*, 784 F.2d 910, 914-15 (9th Cir.1986). The doctrine of equitable tolling allows a court to toll the statute of limitations when the Plaintiff has been prevented from filing within the limitations period by some inequitable conduct by the Defendant. *See Ellis*, 160 F.3d at 706. Plaintiff did not learn that the $177,715.83 was not physically escrowed pursuant to the agreement of the parties until August 19, 2010, when the account statements were delivered pursuant to this Court's directive.

WHEREFORE, Plaintiffs pray that the Court award damages as requested above, plus attorney fees and out-of-pocket expenses, plus post judgment interest, and together with such other and further relief as is just.

Respectfully submitted this 11th day of November 2010.

/s/ *Leonard H. Simon*
Leonard H. Simon, Esq.
TBN: 18387400; SDOT: 8200
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 737-8207 (Direct)
(832) 202-2810 (Direct Fax)
lsimon@pendergraftsimon.com
**ATTORNEY IN CHARGE FOR PLAINTIFFS**

OF COUNSEL:
PENDERGRAFT & SIMON
The Riviana Building
2777 Allen Parkway, Suite 800
Houston, Texas 77019
(713) 528-8555 (Main)
(713) 868-1267 (Main Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of foregoing motion was served electronically by the Court's ECF system on the 11th day of November 2010, to all parties registered to receive such service.

/s/ *Leonard H. Simon*