ENTERED
04/15/2011

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| **HILLARY DURGIN HARMON,** § | Case No. 10-33789 | |
| Debtor(s). § | | |
| § | Chapter 11 | |
| § | | |
| **HILLARY DURGIN HARMON,** *et al*, § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | Adversary No. 10-03207 | |
| § | | |
| **LIGHTHOUSE CAPITAL FUNDING,** § | | |
| **INC.,** § | | |
| Defendant(s). § | Judge Isgur | |

## MEMORANDUM OPINION

For the reasons set forth below, the Court grants, in part, and denies, in part, the relief requested in Lighthouse's Motion for Partial Reconsideration and/or Modification of Memorandum Opinion. The Court also awards the Harmons' bankruptcy estate $50,310.00 in legal fees under § 1640(a)(3) of the Truth in Lending Act.

### BACKGROUND

On February 17, 2011, the Court issued a Memorandum Opinion resolving numerous contested issues, previously tried in multiple stages, between Hillary and Murphy Harmon (the "Harmons") and Lighthouse Capital Funding, Inc. ("Lighthouse"). *See Harmon v. Lighthouse Capital Funding, Inc. (In re Harmon)*, --- B.R. ----, 2011 WL 672338 (Bankr. S.D. Tex. Feb. 17, 2011) ("*Harmon III*").[1] In its Memorandum Opinion, the Court reached the following legal conclusions:

---

[1] The Court has issued multiple memorandum opinions throughout the course of this case. For the sake of clarity, in the Court's February 17, 2011 Memorandum Opinion, the Court attached Roman numerals to the short form citations of its significant prior memorandum opinions. *See, i.e., In re Harmon*, 2010 WL 4273078 (Bankr. S.D. Tex. Oct. 22, 2010) ("*Harmon I*"); *In re Harmon*, 2010 WL 302859 (Bankr. S.D. Tex. Jan 26, 2011) ("*Harmon II*").

1. Lighthouse's lien on the Harmons' homestead is invalid;

2. Lighthouse is liable to Ms. Harmon's bankruptcy estate for $179,413.91 in statutory damages due to Lighthouse's violation of the Truth in Lending Act ("TILA");

3. Lighthouse is entitled to recover $986,992.06 plus 6% interest (accrued from April 23, 2008) under the doctrine of equitable subrogation; and

4. Lighthouse must compensate Ms. Harmon's bankruptcy estate for reasonable legal fees and expenses to be determined at a post-judgment hearing under the Tex. Civ. Prac. & Rem. Code § 37.009 and TILA § 1640(a)(3).

*Id.* at 18.

The Court did not issue a final judgment consistent with *Harmon III*, opting to postpone doing so until after it held a hearing on the Harmons' legal fees. *Id.*

On March 3, 2011, Lighthouse filed Defendant's Motion for Partial Reconsideration and/or Modification of Memorandum Opinion (ECF No. 115). Lighthouse's motion sought reconsideration of two issues and clarification of one issue decided in *Harmon III*. First, Lighthouse claimed that, as an equitable subrogee, it was entitled to recover its reasonable legal fees and expenses. Second, Lighthouse argued that the Harmons were not entitled to recover legal fees under the Tex. Civ. Prac. & Rem. Code § 37.009. According to Lighthouse, the Harmons' declaratory judgment action was governed by the Federal Declaratory Judgment Act ("Federal DJA"), which generally does not permit the recovery of legal fees, and not the Texas Declaratory Judgment Act ("Texas DJA"). Thus, the Court's award of legal fees to the Harmons pursuant to the Texas DJA was erroneous. *See id.* at 3. Lighthouse's third point of contention concerned its ability to recover any deficient amounts owed by Mr. Harmon under the promissory note he executed in Lighthouse's favor. Lighthouse stated that *Harmon III* did not address Lighthouse's ability to recover the deficiency from Mr. Harmon. Lighthouse requested

---

The Court now refers to its most recent Memorandum Opinion in this case, *In re Harmon*, 2011 WL 672338 (Bankr. S.D. Tex. Feb. 17, 2011), as *Harmon III*. In this Memorandum Opinion, *Harmon I* or *Harmon II* will have the same short form citation as in *Harmon III*.

that the Court "clarify and modify its decision to reflect that nothing therein precludes Lighthouse from pursuing an action against Mr. Harmon on any deficiency under the note." Def.'s Mot. for Part. Recons. 4.

Also on March 3, 2011, the Court held a hearing on the amount of the Harmons' legal fees and expenses. At the outset of the hearing, Lighthouse stipulated that, with the exception of a few potentially duplicative entries, the Harmons' counsel's legal fees: (i) were based on reasonable hourly rates; (ii) contained sufficiently descriptive time entries; and (iii) did not appear to be excessive. Lighthouse maintained, however, that, as stated its Motion for Reconsideration, most of the Harmons' fees could not be recovered from Lighthouse.

On March 15, 2011, the Harmons filed an Objection to Defendant's Motion for Partial Reconsideration and/or Modification of Memorandum Opinion (ECF No. 118). The Harmons' Objection disagreed with all three points raised by Lighthouse in its Motion for Reconsideration, arguing that (i) Lighthouse was not entitled to recover legal fees and expenses; (ii) the Harmons were entitled to recover legal fees and expenses from their declaratory judgment action; and (iii) Mr. Harmon's personal liability on the promissory note was previously discharged through his 2009 chapter 7 bankruptcy case and, therefore, Lighthouse could not recover any deficiency from him.

On March 23, 2011, Lighthouse filed its Reply to Plaintiffs' Objection to Defendant's Motion for Partial Reconsideration and/or Modification of Memorandum Opinion (ECF No. 120). The reply addressed the first two points of contention between the parties. However, Lighthouse failed to reply to the Harmon's claim that Mr. Harmon's personal liability to Lighthouse was previously discharged through a 2009 chapter 7 bankruptcy case.

ANALYSIS

This Memorandum Opinion addresses the issues raised in the parties' post-*Harmon III* briefs as well as the amount of legal fees to which the Harmons are entitled under TILA. For the reasons set forth below, the Court holds:

1. Lighthouse is not entitled to recover its legal fees and expenses under the doctrine of equitable subrogation;

2. The Harmons are only entitled to recover legal fees and expenses associated with their TILA claim;

3. Lighthouse's request for modification of *Harmon III* to reflect Lighthouse's ability to recover any deficiency from Mr. Harmon is denied; and

4. Lighthouse must compensate Ms. Harmon's bankruptcy estate for $50,310.00 in legal fees under TILA § 1640(a)(3).

**1. Lighthouse May Not Recover Its Legal Fees and Expenses**

Lighthouse argues that it is entitled to recover legal fees and expenses because it is equitably subrogated to the rights of Fix Funding, L.L.C. The Court finds that the doctrine of equitable subrogation generally does not permit a subrogee to recover its legal fees and expenses and, as set forth below, rejects Lighthouse's request for legal fees and expenses.

Before the Harmons' received the loan from Lighthouse, Fix Funding held a mortgage on the Harmons' homestead. *Harmon III*, 2011 WL 672338, at *11. Fix Funding's mortgage allegedly authorized Fix Funding to recover legal fees and expenses incurred by Fix Funding for the purpose of protecting its interest in the Harmons' homestead.

The Harmons subsequently paid a portion of the Lighthouse loan proceeds—$986,992.06—to Fix Funding in order satisfy Fix Funding's lien. *Id.* This payment gave rise to Lighthouse's right to equitable subrogation. *Id.* at *10-12 (explaining the law governing equitable subrogation and holding that Lighthouse is equitably subrogated to Fix Funding's lien).

Lighthouse now contends that since the Fix Funding deed of trust entitled Fix Funding to recover legal fees, Lighthouse may also recover such fees under the doctrine of equitable subordination.

Lighthouse's reliance upon the Fix Funding deed of trust is misplaced. As the Court stated in *Harmon III*, "[w]hen a party qualifies for equitable subrogation, the party is entitled to a lien in the same amount as the previous lien plus 6% interest beginning at the time of the payoff of the previous lien." *Id.* at 11 (citing *Chase Home Fin., L.L.C. v. Cal. W. Reconveyance Corp.*, 309 S.W. 3d 619, 633 (Tex. App.—Houston [14th Dist.] 2010, no pet). Furthermore,

> It is a general rule that subrogation gives indemnity and no more. In other words, a party who successfully brings suit based on the doctrine of equitable subrogation can only recover the amount he or she was required to pay because of the actions of the defendant. *Thus, subrogation rights cover only the amount paid to discharge the obligation, plus interest from the date of payment; it does not entitle the subrogee to costs or expenses, including attorney's fees*. Moreover, where one is subrogated to the securities held by the creditor, he or she is not entitled to recover the rate of interest expressed in the judgment or note which is the evidence of the debt. The amount of the payment made, with legal interest, is the measure of recovery.

68 Tex. Jur. 3d Subrogation § 36 (emphasis added) (citations omitted).

Lighthouse has not cited any authority to support its requested departure from this general rule. Similarly, Lighthouse has not cited any authority holding that a subrogee may recover legal fees incurred while protecting the subrogee's interest in its collateral because the prior lienholder's deed of trust authorized that prior lienholder to recover such fees. In fact, the only case cited by Lighthouse held, in part, that a "surety's subrogation rights cover only the amount it has paid to discharge its principal obligation." *Interfirst Bank Dallas v. United States Fid. and Guar. Co.*, 774 S.W. 2d 391, 399 (Tex. App.—Dallas, 1989, writ denied). This

principle is in accord with the general rule stated above and in direct contradiction with the theory propounded by Lighthouse.

Accordingly, the Court denies Lighthouse's request for reconsideration of its entitlement to legal fees. As established in *Harmon III*, Lighthouse is only entitled to recover $986,992.06 plus 6% interest (accrued from April 23, 2008) under the doctrine of equitable subrogation.

### 2. **The Harmons May Not Recover Their Legal Fees Under the Texas DJA**

Lighthouse next argues that the Harmons are only potentially entitled to recover legal fees and expenses that were incurred in prosecuting their TILA claim. According to Lighthouse, the Harmons may not recover any legal fees and expenses associated with their request for a judgment declaring Lighthouse's lien invalid.

The Court previously declared Lighthouse's lien on the Harmons' homestead invalid because it failed to comply with the requirements of Article 16 § 50 of the Texas Constitution. *Harmon III*, 2011 WL 672338, at *9. *See also Doody v. Ameriquest Mort. Co.*, 49 S.W.3d 342, 349-50 (Tex. 2001) ("Any attempt to mortgage homestead property, except as approved by the Texas Constitution, is void."). The Court also held that the Harmons were entitled to recover legal fees and expenses under the Texas DJA[2] due to the Harmons' successful prosecution of their declaratory judgment action. *Id.* at *3.

In its Motion for Reconsideration, Lighthouse argues that only the Federal DJA, not the Texas DJA, applies in this adversary proceeding. Lighthouse contends that the Federal DJA became applicable when this lawsuit, which was initiated in Texas state court on April 16, 2010, was removed to federal court, shortly after Ms. Harmon's May 4, 2010 bankruptcy filing. Unlike the Texas DJA, the Federal DJA does not provide for the recovery of legal fees and

---

[2] The Court relied upon Tex. Civ. Prac. & Rem. Code § 37.009, which provides, "[i]n any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just."

expenses. *Mercantile Nat'l Bank v. Bradford Trust Co.*, 850 F.2d 215, 218 (5th Cir. 1988) (The Federal DJA "does not by itself provide statutory authority to award attorney's fees . . . ."). Thus, according to Lighthouse, the Court should reconsider its award of legal fees and expenses associated with the Harmons' declaratory judgment cause of action. For the reasons set forth below, the Court agrees with Lighthouse.

When a state court proceeding is removed to federal bankruptcy court, the bankruptcy court will resolve the state law claims in accordance with applicable state substantive law. However, in reaching that resolution, bankruptcy courts must apply federal rules of procedure. *In re Vancil Contracting, Inc.*, 2008 WL 2557459, at *1 (C.D. Ill. June 24, 2008) ("[B]ankruptcy courts follow federal procedure in applying state substantive law.") (citing *In re Crest-Mex Corp.*, 223 B.R. 681, 684 (Bankr. S.D. Tex. 1998)); *In re Plaint*, 288 B.R. 635, 642 (Bankr. D. Mass. 2003) ("[W]hile a federal court interpreting state law is bound to employ the substantive law of that state, matters of procedure are determined by the rules of the forum.") (citing *Servicios Comerciales Andinos, S.A. v. Gen. Elec. Del. Caribe, Inc.*, 145 F.3d 463, 479 (1st Cir. 1998)). In doing so, bankruptcy courts will treat a removed action as though it had been originally commenced in a federal court. *Chapman v. Clarendon Nat'l Ins. Co.*, 299 F. Supp. 2d 559, 562 (E.D. Va. 2004) ("After the removal of an action from state court . . . [t]he case will proceed as if it had been brought in federal court originally.") (quoting 14C Wright & Miller, Federal Practice & Procedure § 3738 (3d ed. 1998)); *Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 31033, at *3 (W.D. Mich. Jan. 5, 2011).

Both the Texas and Federal declaratory judgment statutes are procedural in nature. *See Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937) ("[T]he operation of the [Federal] Declaratory Judgment Act is procedural only."); *Utica Lloyd's of Texas v.*

7

*Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998) ("Although the Texas DJA expressly provides for attorney's fees, it functions solely as a procedural mechanism for resolving substantive 'controversies which are already within the jurisdiction of the courts.'") (quoting *Hous. Auth. v. Valdez*, 841 S.W.2d 860, 864 (Tex. App.—Corpus Christi 1992, writ denied)); *Self-Ins. Inst. of America, Inc. v. Korioth*, 53 F.3d 694 (5th Cir. 1995) ("[A] party may recover fees in a federal declaratory judgment action where 'controlling substantive law' permits such recovery . . . [but] [t]he Texas DJA is neither substantive nor controlling.").

Thus, when a Texas DJA suit is removed to federal court, it will be treated as though it had been originally filed under the Federal DJA. *See Jones v. Sears Roebuck and Co.*, 301 F. App'x 276, 282 n.12 (4th Cir. 2008) (applying the Federal DJA to a removed proceeding wherein the original complaint invoked the West Virginia DJA) (citing *Chapman*, 299 F. Supp. 2d at 562-63)); *Wells Fargo Bank, N.A. v. American Gen. Life Ins. Co.*, 670 F. Supp. 2d 555, 565 (N.D. Tex. 2009) ("Because the Texas [DJA] is procedural in nature, it does not govern a declaratory judgment action in federal court."); *Ondova Ltd. Co. v. Manilla Indus., Inc.*, 513 F. Supp. 2d 762, 776 n.12 (N.D. Tex. 2007) ("When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the . . . [Federal DJA]."); *Chapman*, 299 F. Supp. 2d at 563 ("[O]nce removed, an action originally filed under the [Virginia DJA] is treated by the federal court as though it had been filed under [the Federal DJA].") (citing *First Nationwide Mortg. Corp. v. FISI Madison, LLC*, 219 F. Supp. 2d 669, 672 n.1 (D. Md. 2002)); *Foreword Magazine, Inc.*, 2011 WL 31044, at *3 ("[A]fter removal, a federal court will apply the [Federal DJA], not the state law."); *Mardian Equip. Co. v. St. Paul Fire & Marine Ins. Co.*, 2006 WL 2456214, at *4 (D. Ariz. Aug. 22, 2006) (same) (citations omitted). Accordingly, a Texas DJA plaintiff will generally be unable to recover legal

fees and expenses—even though the Texas DJA explicitly authorizes the recovery of such fees—once the Texas DJA action is removed to federal court. *See also Utica Lloyd's of Texas*, 138 F.3d at 210 ("[W]e now hold . . . that a party may not rely on the Texas DJA to authorize attorney's fees in a diversity case because the statute is not substantive law.").

In this case, the Court held that the Harmons were entitled to recover reasonable legal fees and expenses under the Texas DJA. The Court now finds that the Texas DJA became inapplicable once the Harmons' case was removed to this Court. Therefore, the Court vacates its prior decision awarding the Harmons legal fees and expenses under the Texas DJA.

The Court further notes that the Harmons' post-removal, amended complaint sought a judgment declaring Lighthouse's lien invalid under both the Federal and Texas Declaratory Judgment Acts. Lighthouse has not requested reconsideration of the Court's declaration that Lighthouse's lien on the Harmons' homestead is invalid. Accordingly, this decision does not alter or amend the Court's prior declaration (under the Federal DJA) of the invalidity of Lighthouse's lien. *See also Harmon III*, 2011 WL 672338, at *9.

### 3. The Harmons May Not Recover Their Legal Fees Under *Mercantile Bank*

The Harmons argue that they are nevertheless entitled to recover their legal fees and expenses under Fifth Circuit's *Mercantile Bank* decision.

The *Mercantile Bank* decision begins with a summary of the issue presented and the Court's general holding:

> The real question is whether a party prevailing in his successful application for declaratory relief is entitled as of course to attorney's fees. We determine that attorney's fees are recoverable by such a litigant only where they are recoverable under non-declaratory judgment circumstances—we hold recovery of attorney's fees is confined to two situations: (i) where, under the

restrictive American [R]ule[3] attorney's fees are allowed; and (ii) where controlling substantive law permits recovery.[4]

*Mercantile Bank*, 850 F.2d at 216.

In *Mercantile Bank*, the plaintiff argued that 28 U.S.C. § 2202—which authorizes the award of "[f]urther necessary or proper relief based on a declaratory judgment or decree . . ."—provided the necessary statutory authority under the American Rule for a court to award legal fees to the victor in a Federal DJA action. *Id.* at 218. The Fifth Circuit disagreed, finding that "'[f]urther necessary or proper relief' does not provide the requisite statutory authority for a district court to automatically award attorney's fees." *Id.* Thus, legal fees are generally not recoverable in actions commenced under the Federal DJA. *Id.*

The Fifth Circuit noted, however, that "there is one general exception to the rule requiring express statutory authorization" before awarding legal fees. *Id.* A court has equitable power to award legal fees in the following limited circumstances:

> "This power has been exercised most often in cases involving the creation, protection, or distribution of a fund within the jurisdiction of the court, but is broad enough to permit the award of fees and expenses in certain other rather restricted circumstances." Those other rather restricted circumstances are limited to cases of bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action, or other specific circumstances that are not present in the case at bar. Neither this particular exception nor the language of 28 U.S.C. § 2202 gives the District Court unlimited power to award attorney's fees. And as previously stated, § 2202 does not by itself provide statutory authority to award attorney's fees that would not otherwise be available under state law[5] in a diversity action.

---

[3] The American Rule provides that each party is responsible for bearing its own legal fees and expenses unless an explicit statutory or contractual provision states otherwise. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975).

[4] As discussed below in footnote 5, the "controlling substantive law" prong is inapplicable in this case.

[5] As in *Mercantile Bank*, it is clear that there is no underlying substantive state law providing for an award of legal fees in this case. The underlying state law in the Harmons' Federal DJA action is the Texas Constitution. The Harmons have not argued that the Texas Constitution authorizes an award of legal fees. Furthermore, the only other

*Id.* (quoting 6 Moore's Federal Practice, § 54.78[1] (2d ed. 1987)).

The *Mercantile Bank* exception to the American Rule applies in two situations: (1) the "common fund" scenario, which exists when an attorney has succeeded in creating a common fund for the benefit of a class of plaintiffs; and (2) cases involving "bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action, or other specific circumstances." *Id.*

The Harmons argue that both the common fund and bad faith scenarios are present in this case. Thus, according to the Harmons, they are entitled to recover fees associated with their Federal DJA under *Mercantile Bank*. As set forth below, the Court disagrees and finds that the Harmons are not permitted to recover legal fees and expenses incurred during the prosecution of their Federal DJA action.

   i. **The Common Fund Exception**

The Harmons claim that the common fund doctrine applies in this case because Ms. Harmon "was the prime mover in the creation, protection and potential distribution of the funds which are currently on deposit in this Court's registry for the benefit of herself, her husband and her bankruptcy estate, on the one hand, and [Lighthouse], on the other hand."[6] Pls.' Obj. to Def.'s Mot. for Part. Recons. 8.

The common fund doctrine provides that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable

---

Texas statute, which could potentially authorize an award of legal fees in this case, is the Texas DJA. The Fifth Circuit has held, however, that the Texas DJA is procedural—not substantive—state law. *See Korioth*, 53 F.3d at 697 ("[A] party may recover fees in a federal declaratory judgment action where 'controlling substantive law' permits such recovery . . . [but] [t]he Texas DJA is neither substantive nor controlling."). Thus, the Harmons may not recover legal fees under Texas law. The only avenue for recovery of such fees is through the *Mercantile Bank* exception to the American Rule, discussed below.

[6] The Harmons' brief fails to elaborate further on the applicability of the common fund doctrine.

11

attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* "Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Id.*

For instance, the common fund doctrine may provide for the recovery of legal fees from those who share in a class action recovery:

> Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.
> . . .
>
> Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs.

*Id.* at 479-80.

In this case, the proceeds of the sale of the Harmons' homestead, in the amount of $1,710,368.46, were deposited into the Court's registry in September of 2010. The $1,710,368.46 is being held by the Court pending the resolution of this adversary proceeding. The Harmons' argue that they are entitled to recover legal fees from Lighthouse, under the common fund doctrine, due to their creation of the fund containing $1,710,368.46.

This theory misconstrues the common fund doctrine. The only legal fees to which the Harmons may be entitled under the common fund doctrine are legal fees that are carved out of the $1,710,368.46 fund. The common fund doctrine does not enable the Harmons to seek additional legal fees from Lighthouse, the defendant in the action, but only from the fund itself.

The Harmons' theory is akin to the successful class action plaintiffs' request for legal fees from the unsuccessful defendant based on the common fund doctrine. The above authority makes clear, however, that the successful plaintiff can only seek fees out of the class's total recovery under the common fund doctrine, not from the defendant.

Accordingly, the Court denies the Harmons' request for additional fees from Lighthouse under the common fund doctrine.

### ii. The Bad Faith Exception

The Harmons also claim an entitlement to legal fees because this case involves "bad faith, vexation, wantonness, or oppression relating to the filing or maintenance of the action, or other specific circumstances." *See Mercantile Bank*, 850 F.2d at 216. In support of their theory, the Harmons point to the Court's January 26, 2011 Memorandum Opinion explaining its basis for a November 19, 2010 oral ruling in which the Court sanctioned Lighthouse. *See generally In re Harmon*, 2011 WL 302859 (Bankr. S.D. Tex. Jan 26, 2011) ("*Harmon II*"). Assuming the *Mercantile Bank* exception encompasses Lighthouse's conduct during discovery, the Court nevertheless finds that it is inappropriate to award the Harmons additional legal fees—unrelated to the Harmons' motion for sanctions—under the circumstances of this case.

In a lengthy opinion, the contents of which will not be repeated here, the Court chronicled what it considered to be Lighthouse's "unwavering misconduct during [the] discovery" process. *See id.* at *27. The Court then sanctioned Lighthouse by deeming "it to be a

fact that Lighthouse did not establish an escrow account in accordance with its obligations under its loan agreement with the Harmons." *Id.* at \*28. The sanction later enabled the Harmons to prevail on the merits of their TILA claim at trial. *See Harmon III*, 2011 WL 672338, at \*12 ("[H]ad the case developed differently—without Lighthouse's misrepresentation of evidence and the Court's sanction order—it might have been more difficult for the Harmons to assert their TILA claim."). The Court ultimately held Lighthouse liable to the Harmons for $179,413.91 in statutory damages (plus reasonable legal fees, discussed below) due to Lighthouse's TILA violation. *See id.* at \*12-17.

The Harmons are now seeking to piggy-back their request for an award of legal fees associated with their Federal DJA claim—a claim that is unrelated to TILA—onto the Court's prior November 19, 2010 order sanctioning Lighthouse. In essence, the Harmons are requesting the imposition of additional sanctions (based on Lighthouse's discovery abuse) against Lighthouse in the form of an award of legal fees.

The Harmons made a similar request in a post-trial brief when they argued that Lighthouse's conduct during discovery made it inappropriate for the Court to equitably subrogate Lighthouse to Fix Funding's lien. *See id.* at 11-12. In *Harmon III*, the Court rejected this argument, stating that the "November 19, 2010 discovery sanction was *appropriate when issued and should not now be extended* to make Lighthouse suffer an additional loss in excess of $1,000,000,00." *Id.* at 12 (emphasis added).

The Court reaches the same conclusion with regard to the Harmons' request for legal fees associated with their Federal DJA claim. Lighthouse's discovery conduct has been adequately addressed. It would be inequitable to use Lighthouse's prior shortcomings, which have already

14

enabled the Harmons to recover $179,413.91 in statutory damages, as the basis for the imposition of an additional award.

Moreover, as discussed below, the Harmons are entitled to recover legal fees and expenses associated with their TILA claim. Given the nexus between the Harmons' TILA claim and the Court's order sanctioning Lighthouse, this recovery includes fees incurred by the Harmons when prosecuting their motion for sanctions. The nexus does not extend to the Harmons' Federal DJA action, which is unrelated to the Court's sanction. Consequently, it would be unreasonable to tether the Federal DJA legal fees to those relating to the Court's November 19, 2010 sanction.

### iii. Conclusion

Assuming *Mercantile Bank* opened the door for an award of legal fees, the Court declines to walk through it. The Harmons' request for legal fees and expenses relating to their Federal DJA action is denied.

### 4. Lighthouse May Not Recover Any Deficiency From Mr. Harmon

Lighthouse next seeks clarification concerning whether Lighthouse can collect its deficiency from Mr. Harmon in accordance with the promissory note he executed in favor of Lighthouse on April 18, 2008. Specifically, Lighthouse "request[ed] that the Court clarify and modify its decision to reflect that nothing therein precludes Lighthouse from pursuing an action against Mr. Harmon on any deficiency remaining under the Note." Def.'s Mot. for Part. Recons. 4.

The Harmons responded by arguing, among other things, that Mr. Harmon's chapter 7 discharge—entered on December 15, 2009 in Mr. Harmon's individual chapter 7 bankruptcy case (Case No. 09-34656)—bars Lighthouse from collecting any deficiency from Mr. Harmon.

15

Pls.' Obj. to Def.'s Mot. for Part. Recons. 8. According to the Harmons, Lighthouse's proof of claim in Case No. 09-34656 is identical to the claim asserted by Lighthouse in this case and Mr. Harmon's personal liability on this claim was discharged on December 15, 2009.

Despite the fact that Lighthouse first raised this deficiency issue in its Motion for Reconsideration, Lighthouse's brief in reply to the Harmon's response is completely silent on its ability to recover a deficiency from Mr. Harmon. It appears Lighthouse was disinclined to advance what would have been, in all likelihood, a losing argument.

In light of the Harmon's argument and Lighthouse's silence, the Court declines Lighthouse's request for clarification and modification. Mr. Harmon signed the promissory note on April 18, 2008. He filed for chapter 7 bankruptcy on July 2, 2009 and was discharged on December 15, 2009.[7]

> Section 727(b) sets forth the debts that are subject to a chapter 7 discharge:
>
>> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from *all debts that arose before the date of the order for relief* under this chapter, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under 502 of this title.

11 U.S.C. § 727(b) (emphasis added).

Under § 301, the filing of a petition under chapter 7 constitutes an "order for relief." Thus, Mr. Harmon's debt to Lighthouse, which arose on December 18, 2009, arose before the date of the order for relief, July 2, 2009. Lighthouse fails to argue that a discharge exception applies; accordingly, the Court will not issue the declaration sought by Lighthouse. Lighthouse's request for clarification is denied.

---

[7] *See* Case No. 09-34656, ECF No. 42.

16

## 5. The Harmons' Are Awarded $50,310.00 in Legal Fees Under TILA § 1640(a)(3)

In *Harmon III*, the Court held that Lighthouse must compensate Ms. Harmon's bankruptcy estate for reasonable legal fees and expenses (for an amount to be determined at a post-judgment hearing) under TILA § 1640(a)(3). *Harmon III*, 2011 WL 672338, at *18. The Court held the post-judgment hearing on the Harmons' legal fees on March 3, 2011. Lighthouse did not object to the reasonableness of the Harmons' TILA fees. The Court has also reviewed the Harmons' fees and finds that the Harmons are entitled to recover $50,310.00 under § 1640(a)(3).[8]

This award of legal fees encompasses those fees incurred by the Harmons in prosecuting their motion for sanctions. The motion for sanctions resulted in the deeming of a highly contested fact in the Harmons' favor. This deemed fact was vital to the Harmons' success on the merits of their TILA action. *See Harmon III*, 2011 WL 672338, at *12. It is, therefore, appropriate to include such fees in the § 1640(a)(3) award.

The Harmons' counsel also testified about the potential fees he would incur should Lighthouse appeal this matter. The Harmons' counsel estimated such fees would amount to a total of between (i) $25,000.00 and $40,000.00 for an appeal to the district court; (ii) $25,000.00 and $30,000.00 for an appeal of the district court's decision to the Fifth Circuit Court of Appeals; (iii) $35,000.00 and $40,000.00 for a direct appeal to the Fifth Circuit Court of Appeals; and (iv) $25,000.00 and $40,000 for an appeal to the United States Supreme Court.

Since the Court awards the Harmons only those fees related to their TILA claim (and not fees related to any other issues), the Harmons may recover the following amounts in the event of a Lighthouse appeal: (i) $25,000.00 for an appeal to the district court; (ii) $25,000.00 for an

---

[8] The $50,310.00 amount reflects those fees found in Harmons' Exs. 56 and 57 that relate to the TILA cause of action.

appeal of the district court's decision to the Fifth Circuit Court of Appeals; (iii) $35,000.00 for a direct appeal to the Fifth Circuit Court of Appeals; and (iv) $25,000.00 for an appeal to the United States Supreme Court.

## CONCLUSION

For the reasons set forth above, the Court holds:

1. Lighthouse is not entitled to recover its legal fees and expenses under the doctrine of equitable subrogation;

2. Lighthouse's request for modification of *Harmon III* to reflect Lighthouse's ability to recover any deficiency from Mr. Harmon is denied;

3. The Harmons are entitled to recover only those legal fees and expenses associated with their TILA claim;

4. Lighthouse must compensate Ms. Harmon's bankruptcy estate for $50,310.00 in legal fees under TILA § 1640(a)(3); and

5. If Lighthouse appeals this decision, Lighthouse must compensate the Harmons for their legal fees associated with the TILA claim up to the maximum amounts set forth directly above.

All other relief is denied.

The Court will issue a Judgment consistent with this Memorandum Opinion and those portions of *Harmon III* that are unchanged by this Memorandum Opinion.

SIGNED **April 14, 2011.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE